FILED
MAY 0 9 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 8396

UNITED STATES OF AMERICA,
Plaintiff,
v.
Bernardo CHAVEZ (1)
Yvette LAGORIO (2)
Adriana GUILLEN (3)
Defendants.

Magistrate Case No.:

COMPLAINT FOR VIOLATION OF

21 U.S.C. § 952 and 960
Importation of a Controlled Substance
(Felony)

The undersigned complainant being duly sworn states:

On or about May 7, 2008, within the Southern District of California, defendants Bernardo CHAVEZ, Yvette LAGORIO, and Adriana GUILLEN did knowingly and intentionally import approximately 25.12 kilograms (55.26 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Douglas A. Struckmeyer
Special Agent
U.S. Immigration & Customs Enforcement

SWORN TO, BEFORE ME, AND SUBSCRIBED IN MY PRESENCE THIS 9th DAY OF May, 2008.

RUBEN B. BROOKS
U.S. MAGISTRATE JUDGE

UNITED STATES OF AMERICA
v.
Bernardo CHAVEZ (1)
Yvette LAGORIO (2)
Adriana GUILLEN (3)

## STATEMENT OF FACTS

This complaint is based upon the personal observations, investigation and information provided to U.S. Immigration and Customs Enforcement Special Agent (SA) Douglas Struckmeyer.

On May 7, 2008, Bernardo CHAVEZ, Yvette LAGORIO, and Adriana GUILLEN entered the United States at the Calexico, California West Port of Entry. CHAVEZ was the driver and LAGORIO and GUILLEN were the passengers of a 2001 Honda Accord registered to CHAVEZ. Customs and Border Protection Officer (CBPO) C. Dorantes received a negative Customs declaration from CHAVEZ. During the primary inspection, CBPO Dorantes noticed that CHAVEZ was avoiding eye contact and his hands were trembling. CBPO Dorantes tapped on the outside of the vehicle's doors and noticed that the passenger doors sounded unusually solid. CBPO Dorantes referred the vehicle to secondary for further inspection.

CBPO Siqueiros encountered the vehicle in the secondary inspection area. CBPO Siqueiros also tapped the doors of the vehicle and noticed that they seemed unusually solid. While she was tapping on the doors, CBPO Siqueiros was also watching the action of CHAVEZ, LAGORIO, and GUILLEN. CBPO Siqueiros noticed that they all became unsteady and began to move around in their seats during this inspection. CBPO Siqueiros notified Canine Enforcement Officer (CEO) Taylor of the vehicle and requested that he use his Narcotic Detector Dog (NDD) to screen the

vehicle. CEO Taylor screened the vehicle with his NDD. His NDD alerted to the front driver's door, indicating the presence of the odor of a controlled substance in that area.

Further inspection resulted in the discovery of 45 packages wrapped in brown postal tape hidden within three of the vehicle's four doors. The packages contained a green leafy substance which field-tested positive for marijuana. The total weight of the packages was 25.12 kilograms.

SA's Douglas Struckmeyer and Brandon Wood interviewed CHAVEZ. CHAVEZ was furnished with his constitutional rights per Miranda in English. MADUENA orally waived his rights, as well as signing the written waiver of rights, agreeing to make a statement.

CHAVEZ stated that he knew the vehicle contained marijuana. He said that he was hired to drive the vehicle into the United States and that he was going to be paid $600 for smuggling the marijuana into the United States. He said that he was hired by a man who he met while he was at a party with LAGORIO and GUILLEN.

SA's Struckmeyer and Wood interviewed LAGORIO. LAGORIO was furnished with her constitutional rights per Miranda in English. LAGORIO orally waived her rights, as well as signing the written waiver of rights, agreeing to make a statement.

LAGORIO stated that she and GUILLEN were hired to assist CHAVEZ. LAGORIO stated that they were hired by a man known as Pelon who they met while they were at a party together. LAGORIO claimed that she did not know Pelon's true name, but she did provide his telephone number. She stated that she and GUILLEN were going to be paid between $500 and $1,000 each. She said that she knew that

they were going to be smuggling something into the United States, and she believed that it was going to be some type of controlled substance.

SA's Struckmeyer and Wood also spoke with GUILLEN. GUILLEN chose not to make any statements regarding her involvement. Inside her purse, GUILLEN had a personal telephone book with numerous handwritten telephone numbers. Among these telephone numbers was a listing for 'P Diddy'. The telephone number listed for P Diddy was the same telephone number the LAGORIO provided as belonging to Pelon.

CHAVEZ, LAGORIO, and GUILLEN were arrested by ICE Agents for violations of 21 USC 952 and 960, Importation of Marijuana. They were booked into the Imperial County Jail, El Centro, California, pending an appearance in U.S. Magistrate Court.